

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Richard S. Morris
County Attorney
Armstrong County
Claude, Texas

Dear Sir:     Opinion No. O-2348
        Re: Collection and deposit of
        local maintenance tax for
        common county line school
        districts.

   We are in receipt of your letter of May 9, 1940,
requesting the opinion of this department, which reads in
part as follows:

   "Gorin Common County Line School District
  No. 12, of Armstrong County, Texas, includes parts
  of four sections and all of two sections of land
  in Carson county and was created by orders duly
  entered upon the minutes of the Commissioners
  Courts of Armstrong and Carson Counties.  In such
  order of Carson County, the administrative control
  of such School District was granted to Armstrong
  County.  Bonds were issued by such district for the
  construction of a school building and from the time
  of such creation to December 14, 1939, Carson County
  has paid taxes collected by it upon the property
  situated in such district, in Carson County, to said
  County Line School District.  At a meeting of the
  Carson County Board of School Trustees, held Decem-
  ber 14, 1939, the following orders were entered:

   "'Came on to be considered by the County Board
  of Trustees of Carson County, Texas, the matter of
  school Taxes collected on territory in Carson County
  known as Common School District 12A on the tax col-
  lector's office, which has heretofore been paid to
  the schools of Armstrong County, Texas, and the said
  Board of Trustees being unable to find that said

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Richard S. Morris, Page 2

territory was ever legally transferred to Armstrong County for School tax purposes and that if such territory were so transferred that it should be at this time returned to Carson County Texas.

"'Motion was made by C. R. Harrell and seconded by Ben McGregor that the County Superintendent shall not remit the tax money to Armstrong County, Texas on said territory and that he make a thorough investigation as to the legal status of such territory and that if he finds that it was ever transferred to Armstrong County, Texas that he take all possible steps to have said territory transferred back to Carson County.'

"The County Superintendent of Carson County, upon authority of the above order is now holding two checks one for $27.36, the other for $14.40, both payable to Armstrong County School District No. 12, being part of 1939 taxes collected by the Tax Collector of Carson County upon property in that county situated within Gorin County Line School District. Release of such checks to Armstrong County authorities has been refused after personal demand. Armstrong County school authorities have not consented to any change in said county line school district.

". . . .

"1. Under the above quoted order appearing in the minutes of the Carson County School Board of Trustees, can the County Superintendent legally withhold payment of taxes collected upon that territory in Carson County situated within the county line school district?

"2. Under Article 2744 should not taxes collected by Carson County Tax Collector be, by him, paid directly to Armstrong County Superintendent instead of being remitted through the Carson County Superintendent?"

Although there appears to be some question as to whether this district was validly created, the dates, facts

and circumstances surrounding its establishment are not submitted, and we therefore assume that the Gorin Common County Line School District No. 12 was validly established and its administrative control vested in the County Board of School Trustees of Armstrong County.

Article 2743, Revised Civil Statutes, 1925, authorizes the creation of common school districts containing territory within two or more counties and provides that the order shall designate and name one of the counties having territory within the district, which shall manage and have control of the public schools therein for all school purposes. The power of the Legislature to provide that control and management of a county line school district shall be in one of the counties having territory included in the district was upheld in Simpson vs. Pontotoc Common County Line School District No. 12, (T. C. A.) 275 S. W. 449.

Article 2744, Revised Civil Statutes, 1925, reads as follows:

"County line districts; powers:-

"Common county line school districts shall have all the rights, powers and privileges of common school districts, and for all school purposes, shall be managed and controlled by the county named in the order creating such district, and should such district desire to levy the special tax authorized by law to be levied for the purpose of the maintenance of its schools, or to issue bonds in accordance with the limitations for such purpose provided by law for common school districts, or both, after an election has been held in such common county line school district as provided by law and it has been determined by a majority vote that such district shall levy such special tax or issue such bonds, the commissioners court of the county having control of such district shall pass an order levying such tax or issuing such bonds, against the territory included within such county where the commissioners court in control of the school is located, and such order levying said tax or issuing said bonds and levying a tax to pay the interest and sinking fund, shall be passed by the commissioners court of each county having

Honorable Richard S. Morris, Page 4

territory in such district. Each such court shall
continue to levy the said tax at such rate as is
determined and certified by the county superinten-
dent of the county having control of said schools
until such tax be diminished or abrogated, as pro-
vided by law, or such bonds, if such a district has
outstanding bonds, have been fully and finally paid
and discharged. The tax assessor shall assess the
taxes levied by the commissioners court of his
county against the territory included in such county
line school district for each year that such tax is
levied, and shall make up a separate tax roll cover-
ing the special tax on territory in his county in-
cluded in the county line school district, and de-
liver it with the general tax rolls of his county,
which shall guide the tax collector in collecting
the local taxes for such school district. The tax
collector shall collect such special tax for such
county line district in his county for every year
that such tax has been levied in such districts and
keep a separate account covering the territory of
his county included in county line school districts,
for the purpose of determining how much tax has been
collected, and such taxes shall be paid by his county
to the county line school district. Such district
shall not be changed or abolished except by the con-
sent of the commissioners court of each county hav-
ing territory contained therein, and if such a dis-
trict has outstanding bonds the same shall not be
changed or abolished in any way until after such
bonds are finally paid and discharged. (Acts 1911,
p. 200.)"

The County Board of School Trustees of one county is
without authority, acting alone, to change the boundaries of
a common county line school district or detach territory there-
from. County School Trustees of Runnels County vs. State
(T. C. A. 1935), 95 S. W. (2d) 1001; Benton vs. Long (T. C. A.
1938), 128 S. W. (2d) 446.

Article 2795, Revised Civil Statutes, 1925, provides
that the county tax collector shall collect common school
district taxes and that he shall "pay all such taxes to the
county treasurer, and said treasurer shall credit each school
district with the amount belonging to it, and pay out the
same in accordance with law."

Honorable Richard S. Morris, Page 5

Article 2828, Revised Civil Statutes, 1925, reads as follows:

"County depository:-

"The terms 'county treasurer' and 'county treasury,' as used in all provisions of law relating to school funds, shall be construed to mean the county depository. The commissioners court shall file with the State Department of Education a copy of the bond of said depository to cover school funds. No commission shall be paid for receiving and disbursing school funds. (Acts 1905, p. 263; Acts 1909, p. 17.)"

Under the provisions of the above statutes, the County Superintendent of Carson County is not authorized to manage or supervise the Gorin County Line School District No. 12, or to collect and hold the tax moneys collected for such school district by the tax collector of Carson County. Article 2744 provides that the tax collector shall collect the taxes in common county line school districts of the territory lying within his county, "and said taxes shall be paid by his county to the county line school district." We find no provision authorizing the tax collector of Carson County to pay over this tax money to the county superintendent of that county. On the other hand, under the statutes pertaining to common school districts generally said taxes should be transmitted to the county depository of the county having administrative control of the county line district and credited to the account of such district.

It is our opinion that the county superintendent of Carson County is not legally authorized to withhold taxes levied and collected by the Gorin Common County Line School District No. 12 upon that portion of the territory of such school district situated in Carson County, Texas.

In answer to your second question, it is our opinion that taxes collected by the Carson County tax collector for the Gorin Common County Line District No. 12, upon that portion of the territory of such district located in Carson County, should be paid directly by him to said county line district through the county depository of Armstrong County,

instead of being transmitted through or delivered or paid to the Carson County Superintendent.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Cecil C. Cammack
Assistant

CCC/oe

APPROVED JUN 1, 1940

ATTORNEY GENERAL OF TEXAS


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN